The LONG TRUSTS, Petitioner,

v.

Robert M. GRIFFIN, Robert M. Griffin, Jr., Marvin and Marie Ogilvie and Charles W. Conrad, Respondents.

No. 04–0825.

Supreme Court of Texas.

Dec. 8, 2006.

Rehearing Denied June 15, 2007.

Mike A. Hatchell, Molly H. Hatchell, Locke Liddell & Sapp LLP, Austin, F. Franklin Honea, The Law Offices of F. Franklin Honea, Thomas F. Loose, Locke Liddell & Sapp LLP, Dallas, Ron Adkison, Wellborn Houston, L.L.P., Henderson, Kenneth L. Ross, Ross Hudgens & Graves, Longview, for Petitioner.

Rex A. Nichols, Nichols & Nichols, P.C., Andrew George Khoury, Andrew G. Khoury, P.C., Longview, for Respondents.

PER CURIAM.

As this case comes to us, two important issues remain.

First: The parties agreed that petitioners would bill the Griffin respondents monthly for their share of litigation expenses, the Griffins would pay each bill within thirty days of billing, and they would share in any recovery. Petitioners failed to bill monthly, but later presented a bill for twenty months of accumulated expenses; the Griffin respondents refused to pay in full within thirty days, but demanded their share when the case settled some two years later. The court of appeals held that respondents were entitled to recover because their breach was excused by petitioners' breach. 144 S.W.3d 99, 107–08 (Tex.App.—Texarkana 2004). But the Griffin respondents could not refuse performance and still insist on the full benefits of the contract.

Second: Respondents agreed to pay part of petitioners' drilling and operating costs in exchange for part of the working interest in producing wells. The court of appeals held that petitioners could not use the Statute of Frauds to avoid performance because the interests involved were identified with reasonable certainty, and in any event, petitioners had accepted re-

spondents' payments under the agreements. 144 S.W.3d at 105. But we disagree that the interests were sufficiently identified, and while petitioners could not invoke the Statute of Frauds with respect to performance already accepted, future performance under the agreement was unenforceable.

We reverse in part the judgment of the court of appeals and remand the case to the trial court to redetermine attorney fees.

Respondents[1] sued petitioners[2] over various disagreements that had arisen among them concerning their joint participation in oil and gas ventures. After a bench trial, the trial court rendered judgment largely for respondents. Both sides appealed. The court of appeals modified the judgment in several respects and otherwise affirmed it. 144 S.W.3d at 112. Only petitioners seek review in this Court.

With respect to the first issue now before us: Petitioners sued the Tejas Gas Co. to enforce take-or-pay obligations and offered to split any recovery with respondents Robert M. Griffin and Robert M. Griffin, Jr. and other investors who shared in the cost of the litigation. Their agreement provided that litigation expenses would be "billed out monthly" but imposed no consequence for petitioners' failure to do so. The agreement stated that late payments would bear interest at the rate specified in a Joint Operating Agreement, but further provided that it was "essential" that all bills be paid within thirty days and that missing more than one payment would result in a participant's "being dropped from the list of working interest

owners who are participating in the litigation." For nearly three years, only a few bills came monthly, but the Griffins paid them timely. Then petitioners submitted bills for twenty months of accumulated expenses a bill, and the Griffins notified petitioners they would pay only a portion of the accumulated bills each subsequent month. Petitioners rejected this arrangement, and when the Griffins did not timely pay the next month's bill, either, petitioners returned the Griffins' delinquent payments and notified them that they had been excluded from further participation in the litigation. The Griffins made no more payments, but when the litigation settled about two years later for $11.1 million, they demanded their share.

When petitioners failed to bill each month, the Griffins could have demanded that they do so and sued to enforce the agreement, but they chose not to do so. Assuming petitioners' breach of their monthly billing obligation was material, as the trial court found, the Griffins were excused from any further obligation to perform. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."). They were entitled to terminate the agreement and sue for breach. But "[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982). By claiming as damages their

---

**1.** Respondents are Robert M. Griffin, Robert M. Griffin, Jr., Marvin and Marie Ogilvie, and Charles W. Conrad.

**2.** Petitioners are Larry T. Long, Sammy Adamson, and Allan Long, in their capacities as trustees of the Lawrence Allan Long Trust, the Charles Edward Long Trust, the Larry Thomas Long Trust, and the John Steven Long Trust, doing business as the Long Trusts.

share of the *Tejas* lawsuit recovery, which was the benefit of the bargain, the Griffins treated the agreement not as terminated but as continuing. The Griffins could not cease to share in the expenses and still insist in sharing in the recovery. The court of appeals erred in affirming this part of the judgment for the Griffins.

With respect to the second issue: Respondents agreed, in 1978 and 1982, to pay part of the drilling and operating costs in exchange for an assignment of part of the working interest in producing wells. Most of the wells were producers, and the parties' arrangement continued for many years. But when disputes arose among them, petitioners asserted that the agreements were unenforceable under the Statute of Frauds because they did not sufficiently identify the properties intended to be covered. As the court of appeals recognized, oil and gas interests are real property, 144 S.W.3d at 104–05, and thus contracts for the transfer or assignment of oil and gas interests are subject to the Statute of Frauds. TEX. BUS. & COM. CODE § 26.01. To satisfy the Statute of Frauds, a contract "must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972). Extrinsic evidence may be used " 'only for the purpose of identifying the [property] with reasonable certainty from the data' " contained in the contract, " 'not for the purpose of supplying the location or description of the [property].' " *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex.1983) (quoting *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945)).

The 1978 agreements stated that the subject leases were located "in the Northeast portion of Rusk County, Texas, and consist[ed] of 50 + leases covering approximately 2100 + net mineral acres in the Dirgin and Oak Hill Fields area" as "described in the attached Exhibit 'A.' " Exhibit A provided the lessor name, the survey name, the term, and the net acreage for each lease at issue. As we have previously held, such information is insufficient to identify the exact location of a lease with reasonable certainty. *Smith v. Sorelle*, 126 Tex. 353, 87 S.W.2d 703, 705 (1935) ("[A] deed purporting to convey land, which describes it only by quantity and as being part of a larger tract, with nothing whereby to identify what specific portion of the larger tract is intended to be conveyed, is void for uncertainty of description."); *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980 (1948) (finding the following description insufficient: "Landlord [ ] *does hereby lease, to tenant, four (4) acres out of the East end of a ten-acre block on the P. Chireno Survey about 2 miles East from the courthouse of the city of Tyler, Smith County, Texas, located on the North side of the Kilgore highway*"). Thus, the 1978 agreements are unenforceable under the Statute of Frauds.

The 1982 agreements stated that the subject leases were "located in the Northcentral portion of Rusk County, Texas, in the North Henderson Field Area, and consist[ed] of 143 leases covering approximately 2100 net mineral acres" as "described in the attached Exhibit 'A.' " It also stated that "[a]ll of the acreage as shown on Exhibit 'A' (attached) is dedicated to a Gas Contract with Tejas Gas Corporation." No Exhibit A was attached to the 1982 agreements. The Tejas Gas contract referred to in the agreements is in the record, but it fails to sufficiently identify the leases, even assuming that was the reference's purpose. The Tejas Gas contract defined the term "contract acreage" as "all of the leases and lands described in Exhibit 'A' and outlined on Exhibit 'B.' "

Exhibit A to the contract stated the leases were "more fully described as follows," but contained no more than headings for items like lease name, description, and acreage, and was blank below the headings. Exhibit B provided a plat that alone is insufficient to identify the subject leases. Another document, also entitled "Exhibit 'A,'" was attached at the end of the contract and provided the name and legal description of each lease, but it stated that it was "[a]ttached to and made part of that certain Letter Agreement dated November 22, 1982, and between Riddle Oil Company, Farmoutor and The Long Trusts, Farmoutee", not the Tejas Gas contract. Contrary to the purpose of extrinsic evidence, the Tejas Gas contract only provides confusion, not reasonable certainty, as to the identity of each lease in the 1982 agreements. Thus, the 1982 agreements are also unenforceable under the Statute of Frauds.

■ The court of appeals held that petitioners could not use the Statute of Frauds to avoid enforcement of the agreements when they had knowingly accepted the benefits of the agreement. 144 S.W.3d at 105. Whether or not this is a correct application of the law, petitioners do not seek to avoid their agreements with respect to wells already drilled. But the 1978 and 1982 agreements expressly provided that respondents' right to participate in future leases existed on a "project by project or well by well basis," and that "participation or non-participation in any one project or well will not affect your right to participate in any other project or well." Respondents' acquisition of interests in the past were completely separate from future transactions and did not insulate the agreements from the Statute of Frauds for wells not drilled, nor is it unfair to permit petitioners to assert the defense as to future transactions toward which re-

spondents have paid nothing. To the extent the court of appeals enforced the 1978 and 1982 agreements for future wells, it was in error.

Because the court of appeals erred in affirming the trial court's enforcement of the litigation recovery agreement, and to the extent it affirmed future enforcement of the 1978 and 1982 agreements, the award of attorney fees must be redetermined. *Barker v. Eckman,* 213 S.W.3d 306 (Tex.2006).

Accordingly, we grant the petition for review and without hearing oral argument, TEX. R. APP. P. 59.1, reverse the court of appeals' judgment in part and remand the case to the trial court for further proceedings consistent with this opinion.